UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| TROY PARKER, | |
| Plaintiff, | Civil Action No. 10-CV-392-JMH |
| v. | |
| DEBORAH A. HICKEY, et al., | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Plaintiff Troy Parker is a prisoner incarcerated at the Federal Medical Center in Lexington, Kentucky. Parker has filed a *pro se* civil rights action under the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 2] The Court has granted Parker's motion [R. 7] to pay the $350 filing fee in installments pursuant to 28 U.S.C. § 1915 by prior order. [R. 8] The Court has conducted its initial screening of Parker's complaint,[1] and finds that this action must be dismissed for the reasons explained below.

**I.**

In his Complaint, Parker indicates that he arrived at FMC-Lexington in June 2008. Prior to his arrival, in November 2003, Dr. Donald Beere diagnosed Parker with Dissociative Identity Disorder, or DID, a form of multiple personality disorder. [R. 2 at 3] Parker advised the prison's

---

[1] The Court conducts a preliminary review of civil rights complaints. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). Because the plaintiff is not represented by an attorney, the complaint is reviewed under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage the Court accepts the plaintiff's factual allegations as true and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). But the Court must dismiss a case at any time if it determines the action (a) is frivolous or malicious, or (b) fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2).

staff psychologist, Dr. Christopher Canon, Ph.D., of this diagnosis, shortly thereafter.

Beginning in February 2009, Parker began regular counseling sessions with Dr. Canon for treatment of the symptoms associated with the condition, including stress and disorientation. [R. 2 Att. A at 4] Dr. Canon concurred with Dr. Beere's diagnosis of the condition as early as April 2009. [R. 2 at 3] At subsequent visits with Dr. Canon during 2009, Parker would display multiple personalities, or "alters," during the visit. [R. 2 Att. A at 6-12] On June 3, 2009, Dr. Canon explained to Parker that the treatment of DID was best accomplished by a clinician with specialized training in that area, and that neither himself nor any other mental health professional within the federal prison system possessed such expertise. Further, attempts at treatment by a non-specialist could actually worsen his condition and symptoms. [R. 2 Att. A at 1, 8]

On September 9, 2009, Dr. Canon further explained that it was unlikely that Parker could be successfully treated so long as he remained in prison, because the environment was stressful and reminiscent of the circumstances under which he experienced the stressful and abusive experiences in his childhood which led to the personality fragmentation. [R. 2 Att. A at 13, 17] Dr. Canon concluded that short of release from prison, the best viable option was to continue "supportive counseling" to help Parker cope with the stresses of prison life until such time as he could seek more comprehensive counseling following his release from the prison environment. [R. 2 Att. A at 14]

While such supportive counseling continued in 2009 and 2010, Dr. Canon concluded that Parker's symptoms continued to worsen and his ability to cope was deteriorating. [R. 2 Att. A at 20-24] On May 4, 2010, Dr. Cannon indicated that Parker's "overall adjustment" continued to deteriorate for two reasons. First, the prison environment is a highly tense environment where Parker is surrounded by other men, and is therefore reminiscent of the circumstances when he was first abused as a child. Second, the mental health staff lack experience or specialized training in

DID. However, Dr. Canon indicated that:

> A transfer to a prison with an inpatient psychiatric unit has been considered but not recommended. Transfer to a psychiatric unit would constitute a significantly disruptive experience for Mr. Parker, would likely place him in an environment at least as tense and reminiscent of his early traumatic experiences as his current environment, would not provide him with mental health staff trained and experienced in treating DID as none have been identified among Bureau of Prison staff, and would move him further away from his limited family support.

[R. 2 Att. 2 at 3] In early 2009, Parker's family support involved speaking with his wife and son over the phone almost every day and with personal visits approximately twice a month. [R. 2 Att. 2 at 5] On June 24, 2010, Dr. Canon decided to consult with Dr. Klein, the BOP's Chief Psychologist regarding Parker's condition and treatment options. [R. 2 Att. A at 29, 31] However, no additional or different treatment has been undertaken.

On August 29, 2009, Parker sought relief by filing an administrative remedy request with the warden, in which he indicated that the BOP mental health professionals lacked the required knowledge of his condition to treat it effectively, and the condition was being worsened by his incarceration. Parker sought an alternative form of confinement, "perhaps best accomplished by Home Confinement." [R. 2 Att. 2 at 1] Denying relief on behalf of warden Hickey, A.W. Terris indicated that Parker was receiving the same kind of "first phase" treatment that he would receive in a private practice setting. [R. 2 Att. 2 at 4-5] Appealing that denial, Parker again "request[ed] that in the absence of proper care that the Bureau have the Inmate released so that he may retain proper care in a safe environment that will not cause him to get worse." [R. 2 Att. 2 at 6] On December 28, 2009, C. Eichenlaub, the Regional Director of the Mid-Atlantic Regional Office ("MARO"), denied Parker's appeal, noting that Parker was receiving care at FMC-Lexington. Parker indicates that while he filed an appeal of that denial on May 14, 2010, the BOP's Central Office has never responded to that appeal. [R. 2 Att. 2 at 13-14]

In his complaint and in an unsigned affidavit, Parker further alleges that at some point in 2010, Dr. Canon advised him that Dr. Rob Nagel, the BOP's Regional Director of Psychology, told Canon that "it wasn't his or Dr. Canon's job to help inmates because it wasn't their fault I was incarcerated." [R. 2 at 8; R. 2 Aff. at 1-2]

Parker filed his complaint in this action on November 16, 2010. [R. 2] Parker contends that the BOP, through its officers, has violated his rights under the Eighth and Fourteenth Amendments to adequate and effective psychiatric care. [R. 2 at 4-5] Specifically, Parker contends that the BOP has failed to adequately train their mental health staff to treat his condition and that, in any event, the simple fact of his incarceration in a prison setting makes effective treatment impossible. [R. 2 at 8-10, 13-14] Parker has named Warden Hickey, MARO Director Eichenlaub, BOP Director Lappin, and Regional Director of Psychology Nagel, each in their individual and official capacities, as defendants in this action. Parker seeks substantial monetary damages from each of the defendants [R. 5] and a "permanent injunction from plaintiff's incarceration" to an alternative form of confinement, such a "[being] monitored in a custody setting of supervised release..." [R. 2 at 13]

## II.

As a preliminary matter, the complaint and supporting materials submitted by Parker establish that he did not properly and timely exhaust his administrative remedies as required by federal law. A prisoner wishing to challenge the manner in which his criminal sentence is being carried out under federal law must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The BOP's Inmate Grievance System requires a federal prisoner to first seek informal resolution of any issue with staff, and then to institute a formal grievance with the warden within twenty days. 28 C.F.R.

§ 542.13, .14(a). If the prisoner is not satisfied with the warden's response, he or she must appeal to the appropriate regional office within twenty days, and if unsatisfied with that response, to the General Counsel within thirty days thereafter. 28 C.F.R. § 542.15(a). *See* BOP Program Statement 1300.16. Because "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...", *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), the prisoner must file the initial grievance and any appeals within these time frames.

In this case, Parker did not file an appeal from MARO's December 28, 2009, denial of his appeal until May 14, 2010, over four months after it was issued and well beyond the thirty days permitted. Because Parker failed to timely exhaust his administrative remedies, his Eighth Amendment claims are subject to dismissal. *Davis v. United States*, 272 F. App'x 863, 865-66 (11th Cir. 2008) ("Because § 542.14(a) requires both the informal and the formal request to be made within twenty days of the alleged deliberate indifference, Davis's request for an administrative remedy was untimely. Therefore, the district court properly dismissed Davis's Eighth Amendment claim for failure to exhaust."); *Lock v. Nash*, 150 F. App'x 157, 158 (3d Cir. 2005). However, the Court will not rest its determination on this procedural ground alone, as there are more fundamental substantive shortcomings which preclude the relief requested.

In addition to failing to properly exhaust his administrative remedies, Parker also failed to bring suit within the applicable statute of limitations. Federal law requires a plaintiff to file a civil rights action within the applicable statute of limitations period. "For purposes of determining applicable statutes of limitations in *Bivens* actions, we apply the most analogous statute of limitations from the state where the events giving rise to the claim occurred." *Baker v. Mukasey*, 287 F. App'x 422, 424 (6th Cir. 2008). In Kentucky, the applicable statute to be borrowed for civil rights claims is the one-year statute of limitations for tort claims found in Ky. Rev. Stat. §

413.140(1)(a). *See Baker*, 287 F. App'x at 424; *Fox v. DeSoto*, 489 F.3d 227, 232-33 (6th Cir. 2007). Parker was therefore required to file suit within one year after he knew or had reason to know of the injury that provides the basis for his claim. *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005) (a statute of limitations begins to run when a plaintiff has reason to know of the alleged constitutional injury).

While Parker did not file an administrative grievance regarding the sufficiency of his psychiatric care until August 29, 2009, the record establishes that Parker was both well aware of the limitations on the care he could be provided by the BOP and was concerned with its sufficiency well before that date. Shortly after he was convicted by a federal jury on several counts of bank fraud on February 29, 2008, and remanded to the custody of the BOP, Parker filed two motions with the trial court requesting that his psychiatric care be provided by Dr. Beere at government expense, motions denied by the trial court. On June 4, 2008, prior to his sentencing Parker authored a *pro se* letter to the sentencing judge requesting leniency on several grounds, in which he stated:

> [The] BOP is not capable of providing mental health care for my condition. ... when I pushed [the BOP] thru numerous inmate request forms, I was told no treatment program is offered in any BOP facility. ... I ask the court to consider an alternative sentence to imprisonment, so that I can get the approiate (*sic*) medical treatment.

The trial court denied Parker's request, as well as his motion for a downward departure for diminished mental capacity. The latter determination was upheld on appeal by the Court of Appeals for the Sixth Circuit. *United States v. Parker*, No. 2:07-cr-082-DLB (E.D. Ky. 2007) [R. 39, 43, 46, 51, 57 therein], *aff'd*, No. 08-5769 (6th Cir. 2010) (slip opinion of November 10, 2010). The foregoing establishes that Parker was fully aware of the basis for his claims as early as June 2008, yet did not file suit until nearly two and a half years later, and his claims are hence barred by the applicable one-year statute of limitations.

Even if this were not so, Parker's request for monetary damages in his complaint would have

to be dismissed because each of the named defendants is either immune from such relief or was not personally involved in his psychiatric care. Parker has sued each of the four named defendants in both their individual and official capacity. However, the *Bivens* doctrine does not permit an official capacity suit against a federal official. Such a suit is essentially a claim directly against the United States, which is entitled to absolute immunity. *Berger v. Pierce*, 933 F.3d 393, 396 (6th Cir. 1991) (*citing Butz v. Economou*, 438 U.S. 478, 512-14 (1978)); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003).

While *Bivens* expressly validated the availability of a claim for damages against a federal official in his or her individual capacity, an officer is only responsible for his or her own conduct. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948-49 (2009). An official must be personally involved in the conduct complained of - merely responding to an inmate grievance is insufficient to demonstrate either personal involvement in an inmate's medical care or sufficient minimum contacts with the forum state to warrant the exercise of personal jurisdiction. *Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003); *O'Cull v. Bureau of Prisons*, No. 5:09cv62-DCB-MTP, 2009 WL 6637968, at *3-4 (S.D. Miss. Dec. 16, 2009). Warden Hickey and MARO Director Eichenlaub merely responded to Parker's inmate grievances based upon the medical and psychological information provided by the BOP's mental health professionals, and BOP Director Lappin is simply the national director of the BOP with no involvement in decisions regarding Parker's care. Because none of these three defendants were personally involved in making decisions regarding Parker's psychiatric care, the individual capacity claims against them must be dismissed. Cf. *Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003) (absent evidence that warden was medically trained or independently understood allegedly adverse consequences of regional medical director's decision not to refer prisoner for outside treatment, warden was not liable for deliberate indifference to prisoner's medical needs

merely for adopting medical director's decision).

The only allegation Parker makes against Regional Director of Psychology Nagel is that Dr. Canon relayed to him a single statement by Nagel that "it wasn't his or Dr. Canon's job to help inmates because it wasn't their fault I was incarcerated." [R. 2 at 8; R. 2 Aff. at 1-2] Assuming this hearsay statement was made, while it would reflect an inaccurate statement of the BOP's responsibilities to its inmates and a regrettable attitude, it does not suggest that Nagel possessed any authority or involvement in decisions regarding Parker's care. Rather, Dr. Canon's decision to confer with Dr. Klein, the BOP's Chief Psychologist, suggests that such authority to make binding decisions regarding care may have rested with him. [R. 2 Att. A at 31]

All of Parker's claims for monetary damages therefore must be dismissed with prejudice against each of the four named defendants. With respect to his request for injunctive relief, such relief is available not through a *Bivens* action, but directly by federal statute granting a limited waiver of sovereign immunity:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702; *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005).

Nonetheless, Parker's request for injunctive relief must be denied because he cannot pursue the relief he seeks in this civil rights action. Importantly, Parker does not argue merely that the BOP must provide him more treatment in prison or another form of treatment in prison -- rather, Parker contends that any treatment he receives while incarcerated is constitutionally impermissible because of the harmful effects of the prison environment upon his psychological stability and well-being. Indeed, Parker has repeatedly made clear that the relief he seeks is release from prison. In his

August 29, 2009, grievance to the warden, Parker indicated that the difficulties in treating his condition necessitated an alternative form of confinement such as home confinement. [R. 2 Att. 2 at 1] Parker reiterated this request in his appeal to MARO, seeking release from custody to pursue treatment. [R. 2 Att. 2 at 6]

In Parker's view, the **only** way the BOP can satisfy the Eighth Amendment is to release him from prison entirely. Properly viewed, this is not a challenge to the BOP's execution of his sentence, but a direct challenge to his sentence of incarceration itself. Parker himself has understood his challenge to his psychiatric care as necessitating relief from his underlying sentence. After the sentencing court imposed its sentence and Parker filed his direct appeal, on September 8, 2009, Parker filed a *pro se* "Emergency Motion for Relief from Ongoing Violation of Eighth Amendment by Bureau of Prisons," in the Sixth Circuit. In his motion, Parker again asserted that because no adequate treatment options were available to him in any federal prison, the imposition of a prison term for his crimes constituted cruel and unusual punishment:

> ... the Government secures a conviction only to now be confronted with the reality that to punish with incarceration is cruel and unusual in this instance and will actually harm the Petitioner. ... *[Parker's] 120 month sentence of imprisonment is cruel and unusual and thereby prohibited by the 8th Amendment*. ... Parker prays this Court to grant emergency immediate release from his dangerous and torturous environment and place him in an alternate form of confinement.

*Parker v. United States*, No. 08-5769 (6th Cir. 2008) (motion of September 8, 2009, at pg. 5, 7, 9) (emphasis added). The Sixth Circuit denied relief by order on January 8, 2010. Because the injunctive relief Parker seeks is to invalidate the sentence of imprisonment pursuant to his criminal conviction, he may not pursue it in a civil rights action, but rather must seek appropriate relief with the trial court. *Cf. Lee v. Wood*, No. 04-710-BH-B, 2007 WL 2460756, at *3 (S.D. Ala. Aug. 27, 2007) ("A claim for injunctive and declaratory relief in a § 1983 action where a plaintiff challenges the fact or duration of his confinement and seeks his immediate release is not cognizable in a § 1983

action.") (*citing Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005)); *Abella v. Rubino*, 63 F.3d 1063, 1066 (11th Cir. 1995) ("Thus, declaratory or injunctive relief claims which are in the nature of habeas corpus claims - i.e., claims which challenge the validity of the claimant's conviction or sentence and seek release - are simply not cognizable under § 1983. This rule applies equally to *Bivens* actions."). The situation presented is the converse of that in *McCarty v. Pitzer*, No. 96-2301, 1997 WL 225869 (7th Cir. Apr. 30, 1997), where a prisoner filed a habeas petition seeking release from custody to obtain his own medical care. Nonetheless, the Seventh Circuit held that the prisoner's action should have been construed as a *Bivens* action, notwithstanding his request for release from custody, where he complained not that he was incapable of being properly treated in prison, but merely that he required further and more consistent treatment. *Id.* at *3 ("McCarty's challenge to the quality of his medical care does not question the fact, duration, or degree of his confinement, but rather its conditions, and under *Graham* he must turn to a *Bivens* injunctive remedy."). Had Parker contended only that more or different treatment within the prison would be sufficient, this result would be proper, but Parker has repeatedly and expressly contended that only release from prison entirely will do. Such a claim must be pursued in an action for relief from the sentence itself rather than through *Bivens* or a habeas corpus action. *Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005) ("As release is not available under *Bivens*, Glaus's habeas corpus petition would be proper if release were among the possible remedies for an Eighth Amendment deliberate indifference claim. Unfortunately for Glaus, it is not. If an inmate established that his medical treatment amounts to cruel and unusual punishment, the appropriate remedy would be to call for proper treatment, or to award him damages; release from custody is not an option.").

Accordingly, **IT IS ORDERED** that:

1. Plaintiff's Complaint [R. 2] is **DISMISSED WITH PREJUDICE**.

2. The Court will enter an appropriate judgment.

Entered this 7th day of March, 2011.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge